**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

SAMANTHA JACKSON

        Plaintiff,

    v.

MICELI DAIRY PRODUCTS CO.

        Defendant.

CASE NO. 1:25-cv-00387

JUDGE BRIDGET MEEHAN BRENNAN

---

**PLAINTIFF SAMANTHA JACKSON'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

Samantha Jackson was terminated for leaving an 11-second voicemail with human resources manager Sheila Williams, which stated in its entirety, "Hi Sheila, this is Samantha Jackson. The **next time one of your employees puts their hands on me or touches my ass again** I'm gonna cut them. Just to let you know." Ex. P to Pl. Dep.; Doc. 17-1 at 72-73, emphasis added. The reference to an employee "put[ting] their hands on me or touch[ing] my ass again" is a clear reference to workplace sexual harassment, particularly because Jackson was just reinstated to work just days after she complained about prior sexual harassment that was **substantiated** by Miceli.

Curiously, Miceli's 27-page Motion for Summary Judgment filing completely omits Jackson's words about sexual harassment, only partially quoting her 11-second voicemail (Doc. 19 at 717):

> On July 31, 2023, Plaintiff left a voicemail for Williams, in which Plaintiff threatened that "the next time" a Miceli Dairy employee "put[] their hands on [her]," Plaintiff was "going to cut them" (the "Voicemail"). Ex. P to Pl. Dep. By using the term "cut," Plaintiff intended to convey that Plaintiff would use a "knife" to "go across" their body. Pl. Dep. 193-94.

1

Miceli's omission is an attempt to avoid the central issue of this case – that she was fired for engaging in the protected activity of complaining about sexual harassment. Jackson's key words "the next time one of your employees puts their hands on me or touches my ass again" is not for lack of space. Miceli found space to claim that Jackson supposedly "intended to convey that Plaintiff would use a 'knife' to 'go across' their body," though Jackson's voicemail mentions nothing about a "knife," which was only raised by defense counsel during its deposition of Jackson.

Miceli did not credibly believe Jackson was a physical threat to any of her coworkers, because they made no attempt to determine who Jackson supposedly "threatened" (or more accurately, who sexually harassed her). Doc. 17-1 at 74, 78-79, 89-90. If Miceli actually believed she was a "threat," it would have attempted to determine who was supposedly at "risk" and taken measures to warn the employee of the "threat." But Miceli simply terminated Jackson without returning her voicemail to ask what happened or investigate who she accused of touching her "ass." Miceli had no idea its employee Myron Boyd was even the accused harasser. Doc. 17-1 at 80, 82.

While exasperated about being sexually harassed, Jackson did not intend her voicemail to human resources to be an actual threat. If she was actually planning to "cut" someone, she wouldn't have told Miceli's human resources department in advance. She obviously called human resources to report sexual harassment, not to announce her intent to commit a violent act. Jackson was unequivocally engaged in the protected activity of complaining to human resources about workplace sexual harassment. The law is clear that such a protected complaint, even if accompanied by unprofessional actions or threats, does not lose its protection.

## II.   PLAINTIFF AGREES NOT TO OPPOSE DISMISSAL OF HER SEXUALLY HOSTILE WORK ENVIRONMENT COUNTS

To consolidate her case and focus on the main issue, Jackson agrees not to contest Miceli's Motion seeking dismissal of her Counts I and III for sexually hostile work environment. Jackson

2

will focus solely on defending her Counts II and IV for retaliation. Dismissal of her sexually hostile work environment counts has no prejudicial effect on her retaliation counts, which have a separate set of elements. Jackson need not prove a sexually hostile work environment to prevail on retaliation, because "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *AMTRAK v. Morgan*, 536 U.S. 101, 114 (2002); *Sharpe v. Cureton*, 319 F3d 259, 267 (6th Cir. 2003).

## III. COUNTER-STATEMENT OF FACTS

### A. Workplace Sexual Harassment

Jackson's sexual harassment at the Miceli plant is relevant to her later retaliation. Jackson suffered sexual harassment when she first started at Miceli. Her direct supervisor Kenneth Willis called her his "little booty cousin" or "little booty cuz" nearly every time they worked together. Doc. 1, PageID 2; Doc. 16-1 at 57, 92-93. He frequently commented about slapping her buttocks. Doc. 16-1 at 94. He asked sexually inappropriate questions such as what Jackson did with her tongue ring.  Id. at 99. Jackson repeatedly told Willis to stop sexually harassing her and complained to Superintendent Nazareth Gadiano about Willis, though Willis' sexual harassment continued. Doc. 1, PageID 2, 4-5; Doc. 16-1 at 57, 58. After Jackson returned from administrative leave after she complained about sexual harassment from coworker Deante Rogers, Willis told Jackson he (Willis) was still going to touch her "ass" anyway.  Doc. 1, PageID 5; Doc. 16-1 at 97, 157, 197.

On or about June 18, 2023, Jackson's coworker Deante Rogers approached Jackson with the factory filter and pantomimed as if he was ejaculating. Doc. 1, PageID 3; Doc. 17-1 at 55; Doc. 16-1 at 52. Rogers asked Jackson when she was going to have sex with him.  Doc. 1, PageID 3. When white cheese was placed into a water tank as part of production, Rogers asked Jackson when

3

"white stuff" was going to be on her face, a reference to semen.[1] *Id*.; Doc. 16-1 at 52. The same day, Rogers followed Jackson to the women's locker room and the women's bathroom and pounded on the door.  Doc. 1, PageID 3; Doc. 16-1 at 68.

On June 24, Rogers told Jackson, "Why are you looking at me as if you want to suck my dick?" and "I see you have white shit on your face. Let me add more." Doc. 17-4; Doc. 1, PageID 4. Rogers again followed Jackson to the women's bathroom and pounded on the door. Doc. 17-4; Doc. 1, PageID 4; Doc. 16-1 at 139. Jackson told Rogers to stop following and harassing her. Doc. 17-4; Doc. 1, PageID 4. Rogers retaliated by calling Jackson a "bitch" and a "hoe" and said he would "beat [her] ass." Doc. 17-4; Doc. 1, PageID 4; Doc. 16-1 at 52, 66. Jackson told Rogers to "leave [her] the fuck alone" and warned that if he touched her, she would "fuck [him] up." Doc. 1, PageID 4. Jackson made these strong comments because failing to express robust opposition to her harassers would be viewed as weakness and invite further sexual harassment.[2] Id. Later that day, Jackson verbally reported Rogers and Willis' sexual harassment to Superintendent Gadiano. Id. In response, Gadiano sent Jackson home pending an investigation. Id.

On June 30, 2023, plant manager Russell Christian spoke with Jackson about the sexual harassment. Doc. 16-1 at 141. Shortly after this meeting, he proposed terminating Jackson because she "had a fit on the floor causing a hostile work environment," despite that Jackson had reacted in response to Rogers' sexual harassment. Doc. 17-1 at 44; Plaintiff's MSJ Ex. 1. On July 10, Jackson submitted a written statement to Miceli detailing some of Rogers's workplace sexual harassment. Doc. 17-4. In a July 17 phone call with Miceli's human resources consultant Kim Marlette, Jackson again detailed Rogers' sexual harassment. Doc. 17-6.

---

[1] Rogers often pantomimed sexual acts and made comments about "white stuff" around Jackson. Doc. 16-1 at 53, 56.
[2] For example, Rogers told Miceli in his investigation over the sexual harassment that others on the crew joke about sexual issues. Plaintiff's MSJ Ex. 2.

4

**Rogers admitted he sexually harassed Jackson** and was given a final warning for using "language, gestures, jokes and comments that are considered inappropriate for the workplace." Doc. 17-1 at 49; Plaintiff's MSJ Ex. 2; Plaintiff's MSJ Ex. 3, Bates 649. Miceli's investigation notes Rogers admitted that he pantomimed ejaculation and gyrated his hips. Plaintiff's MSJ Ex. 2:

> I [Miceli investigator] asked him if he ever changes the filters on the equipment and he said yes, I then asked him if he ever made any type of jesters [sic] while holding the filter in his hands, at first he said no but then I mentioned that there are cameras in the area and is he sure he hadn't done anything with the filter that could be construed as in a sexual manner. He then said that he may have made an up and down motion with the filter housing while moving his hips also.

Miceli warned Rogers that "following an employee around and monitoring their breaks and knocking on windows and doors is not part of his job function, and that it could be considered a form of harassment." Doc. 17-1 at 60.

Despite finding that Rogers sexually harassed Jackson, it also issued a final warning **to Jackson** on July 25 for her reaction to Rogers' sexual harassment, claiming "you got upset and were yelling and using inappropriate language in the plant, when you were asked to calm down you continued to yell[.]" Doc. 17-5. Jackson refused to sign this document because it failed to explain that her actions were in response to Rogers's sexual harassment. Id.

### B. Myron Boyd's Sexual Harassment, and Jackson's Complaint/ Termination

On July 31, just after she returned from leave following Rogers' sexual harassment, another employee named Myron Boyd made unwanted sexual advances to Jackson and touched her buttocks on the job. Doc. 1, PageID 5; Doc. 16-1 at 91, 107, 109. While Jackson was previously interested in a friendship with Boyd that might have developed into a romantic relationship, they never spent time together outside of work. Doc. 16-1 at 116. She and Boyd "were supposed to hang out like one time and that didn't happen so I just cut it off." Id. While Miceli claims Jackson sent Boyd "sexual pictures" (Doc. 19, PageID 713), this is merely supposition, as no such pictures

5

exist and Jackson does not recall sending sexual pictures. Doc. 16-1 at 130-31.

When Boyd touched Jackson's buttocks on the job on July 31, it was completely unwelcome. Id. at 108-09. Jackson told Boyd to leave her alone and called human resources that day to report the sexual harassment. Doc. 1, PageID 5. She first complained to a floor supervisor, asking if there was camera footage of the harassment. Dec. 16-1 at 110-11. She then called human resources manager Sheila Williams twice that day, leaving an exasperated voicemail the second time after she could not personally reach Williams. Id. at 111. Jackson's voicemail stated in its entirety, "Hi Sheila, this is Samantha Jackson. The next time one of your employees puts their hands on me or touches my ass again I'm gonna cut them. Just to let you know." Ex. P to Pl. Dep.; Doc. 17-1 at 72-73.

Miceli did not return Jackson's voicemail but instead terminated her the next day. In its August 1 termination notice, Defendant wrote that "On 7/31/2023 at 12:41pm, while on the clock, you called and left a voice message on the Human Resource Manger's voice mail making the threat that if any other employee touches you, 'I will cut them.'" Doc. 16-2. Miceli ignored that Plaintiff's voicemail was a complaint to human resources about sexual harassment, made immediately after Jackson returned to work following Rogers' prior substantiated sexual harassment. Id. There is no other reasonable way to interpret Jackson's words "the next time one of your employees puts their hands on me or touches my ass again."

Miceli made no attempt to determine who Jackson supposedly "threatened" (or more accurately, who sexually harassed her). Doc. 17-1 at 74, 78-79, 89-90. If Miceli actually believed she was a "threat" to one of their employees, it would have attempted to determine who was supposedly at risk and would have taken measures to warn the employee of the "threat." But Miceli did not even return Jackson's voicemail. They had no idea Myron Boyd was even the accused

harasser. Doc. 17-1 at 80, 82. If Jackson was actually planning to "cut" someone, she wouldn't have told Miceli's human resources department in advance. She obviously wanted to speak with human resources to report sexual harassment, not to announce her intent to commit a violent act. In her deposition, Jackson described her voicemail as follows (Doc. 16-1 at 196):

> I guess it was a cry for help, I guess like telling them like, hey, they need to watch their employees and what their employees are doing, that would be a cry for help, yes, but like as far as me saying that I'm going to cut someone, that's me saying like, hey, if you don't pretty much watch your employees or tell your employees to stop sexually harassing me, then yeah, even though I never was -- my intent was never to cut someone, no.

In its Motion for Summary Judgment, Miceli claims that it was somehow wrong for Jackson to call human resources manager Sheila Williams. Doc. 19, PageID 718.

> When Plaintiff left the Voicemail, Plaintiff knew that there were many other avenues available to her to obtain Miceli Dairy's help to stop unwanted behaviors. Plaintiff could have called Miceli at the number listed in the handbook, which Plaintiff admits receiving. Pl. Dep. 114-15. Plaintiff could have contacted [a different Miceli representative Kim] Marlette, whose personal cell phone number she possessed and had recently used during the Investigation. Pl. Dep. 160-61. In fact, Plaintiff admits that had she called Marlette instead of Williams, she would not have threatened violence against Miceli Dairy's employees. Pl. Dep. 161-62.

Miceli's claim that "Plaintiff could have called Miceli at the number listed in the handbook" ignores that the Miceli handbook sexual harassment policy **explicitly lists Sheila Williams as the only human resources contact**. Doc. 17-7, PageID 627. Per the handbook, "An individual who believes they have been subject to harassment should report the incident to Human Resources or supervisor or director, or, if that is not possible, then to any other member of management: **Sheila Williams** 216 791-6222 ext. 149." Id. The handbook does not even list Marlette as a contact for a sexual harassment complaint. Id. It was proper for Jackson to contact Williams, and it is nonsensical for Miceli to claim Jackson would not have "threatened violence" if she called Marlette. If Jackson would not have "threatened violence" if she merely spoke to a different Miceli

7

contact, that is not an actual threat of violence. Of course, Jackson made clear during her deposition that, "like I said, I wasn't going to go through with my threat[.]" Doc. 16-6 at 162.

### C. Miceli Did Not Terminate Other Employees for Committing Actual Workplace Violence

In contrast to Miceli's harsh treatment for Jackson's supposed "threat," Miceli allows other employees to engage in actual workplace violence without termination. Jackson's own primary sexual harasser, Deante Rogers, still works for Miceli despite his serious criminal record[3] and having received six "final warnings," including for physically fighting with an employee and pushing them into a wall. Plaintiff's MSJ Ex. 3.

In another instance on May 2, 2023, shortly before Jackson's termination, Miceli employee Darrell Croom was issued a final warning after he "became violent and through [sic] a chair in the office and then proceeded to the sanitation lead in a manner as to provoke and [sic] physical altercation." Plaintiff's MSJ Ex. 4, emphasis added. Croom was not terminated for actual workplace violence, while Jackson was terminated for her supposed "threat" in how she reported workplace sexual harassment. Miceli attempts to downplay Croom's actions by claiming he "did not throw the chair at anyone or threaten anyone with violence." Doc. 24, PageID 991. However, this is only the opinion of corporate representative James Caputo, who conceded at the deposition that "I don't have any recollection of" the incident, and he was only "basing it off what I'm reading here" on the disciplinary form, which itself notes Croom "**became violent**." Doc. 17-1 at 102-04.

## IV. ARGUMENT – JACKSON SUFFERED UNLAWFUL RETALIATION

Title VII's anti-retaliation provisions broadly prevent an employer from "discriminat[ing] against any of his employees […] because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C.§ 2000e-3(a). To establish prima facie

---

[3] Rogers served six years in prison for cocaine distribution. Doc. 18-1 at 9-10.

retaliation under Title VII and the Ohio Civil Rights Act (OCRA),[4] a plaintiff must establish that: (1) she engaged in activity protected by Title VII or the OCRA; (2) the exercise of her civil rights was known to the defendant; (3) the defendant took an employment action adverse to plaintiff; and (4) there was a causal connection between the protected activity and adverse employment action. *Nguyen v. City* of *Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). Plaintiff's prima facie burden is "relatively light." *Jackson v. Genesee Co. Rd. Comm.*, 999 F3d 333, 352 (6th Cir. 2021). While there is no dispute Jackson's termination constitutes an adverse employment action under element (3), the parties dispute elements (1), (2), and (4).

### A.    Jackson Complained about Workplace Sexual Harassment

Miceli claims Jackson failed to meet elements (1) and (2) (engaging in protected activity known to the Defendant) because her voicemail was too vague, and she "did not oppose an employment practice made unlawful by Title VII" and "did not characterize the alleged physical contact as sexual harassment." Doc. 19, PageID 726. This argument is without merit. Jackson left this voicemail with human resources just days after she was reinstated after complaining about prior substantiated sexual harassment. Jackson's statement "the next time one of your employees puts their hands on me or touches my ass again" is a clear reference to workplace sexual harassment. At minimum, reading the facts in a manner most favorable to Jackson as the non-moving party, a factual dispute exists so as deny summary judgment as to Miceli's claim that Jackson failed to engage in protected activity known to the Defendant.

Jackson was not required to explicitly describe all sexual harassment details or use specific legal terminology in her initial voicemail to human resources, because "an accusation need not be lodged with absolute formality, clarity, or precision" to come within the protection of Title VII.

---

[4] The analysis for retaliation under OCRA and Title VII are the same. *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 760 n.1 (6th Cir. 2008) (citing Ohio Rev. Code § 4112; *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008).

*Crawford v. Chipotle Mexican Grill, Inc.*, 773 Fed.Appx. 822, 828 (6th Cir. 2019) (internal citation removed). "Title VII does not restrict the manner or means by which an employee may oppose an unlawful employment practice." *Yazdian v. ConMed Endoscopic Technologies, Inc.*, 793 F3d 634, 645 (6th Cir. 2015). Once Miceli received a sexual harassment complaint, it "had a duty to investigate and take prompt and appropriate corrective action in response to Plaintiff's complaints of sexual harassment." *Fenton v. HiSan, Inc.*, 174 F.3d 827, 830 (6th Cir. 1999); see also *Parker v. Gen. Extrusions, Inc.*, 491 F3d 596, 604 (6th Cir. 2007). Jackson left a voicemail because she expected human resources to return her phone call, where she would have further described her sexual harassment. Miceli terminated Jackson without returning her call.

In attempted support of its position, Miceli cites *Khalaf v. Ford Motor Co.*, 973 F.3d 469, 490 (6th Cir. 2020), claiming *Khalaf* holds that "plaintiff's report did not constitute protected activity under Title VII because it did not 'explicitly characterize' the underlying conduct as sexual harassment." Doc. 19, PageID 726. However, Jackson's case is highly distinguishable from *Khalaf*. In *Khalaf*, the plaintiff's complaint – "I have asked Pauline to file a claim with you because she made [an] accusation over a discussion she had with David" – was so vague that it could not reasonably be understood to be a complaint about sexual harassment. 973 F.3d at 490. Jackson's comment "the next time one of your employees puts their hands on me or touches my ass again" is unequivocally a reference to sexual harassment, or at least a reasonable juror could understand it as such. Jackson's complaint is a much clearer reference to sexual harassment than other cases involving protected complaints. In *Okoli v. City of Baltimore*, 648 F.3d 216 at 224 (4th Cir. 2011), the Court found an employee engaged in the protected activity of reporting workplace sexual harassment when she submitted a complaint that lacked any direct reference to *sexual* harassment, instead describing the harasser's actions only as:

10

> unethical and unprofessional business characteristics, e.g., *harassment*, degrading and dehumanizing yelling and demanding, disrespect, mocking and gossiping about other colleagues (anyone in the City government) and lack or disregard for integrity.

Despite the *Okoli* plaintiff's lack of reference to sexual harassment, the Court found the complaint sufficiently obligated the employer to investigate and learn that the employee was describing sexual harassment. *Id*. Jackson's specific references to unwanted sexual contact more clearly puts Miceli on notice than the *Okoli* defendant.

Finally, as noted in Section II of this Brief, Jackson's retaliation claim does not require her to prove that Boyd's sexual harassment itself meets the standard for a sexually hostile work environment. "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *AMTRAK*, 536 U.S. at 114. "[A]n employee is protected from retaliation when she reports an isolated incident of harassment that is physically threatening or humiliating, even if a hostile work environment is not engendered by that incident alone." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 268 (4th Cir. 2015). Boyd touching Jackson's buttocks was unwanted sexual contact, thus making Jackson's complaint protected activity. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 580 (6th Cir. 2000).

### B.   Jackson's Workplace Sexual Harassment Complaint was Not a Realistic "Threat of Violence"

Miceli claims that Jackson fails to meet element (4) of a retaliation claim (causal connection between Jackson's complaint and the termination) because "[a]n employee is not entitled to violate an employer's legitimate workplace policies in the name of protected activity. Doc. 19, PageID 727. A protected complaint, even if accompanied by unprofessional actions or threats, does not lose its protection. *Jackson*, 999 F3d at 352. The inherently conflictual nature of an employee's invocation of workplace civil rights necessitates its protection from an employer's

11

claims of insubordination. *EEOC v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1015 (9th Cir. 1983). As the Court held in *Crown Zellerbach Corp.* (*Id.*, internal citation omitted):

> almost every form of opposition to an unlawful employment practice is in some sense disloyal to the employer, since it entails a disagreement with the employer's views and a challenge to the employer's policies. Otherwise the conduct would not be opposition. If discharge or other disciplinary sanctions may be imposed based simply on disloyal conduct, it is difficult to see what opposition would remain protected[.]

Miceli unequivocally terminated Jackson in retaliation for engaging in the protected activity of responding to and reporting her sexual harassment by coworkers. Plaintiff's termination letter directly states that her termination was prompted by the voicemail she left on July 31, 2023, in which she reported sexual harassment to the Defendant company by noting that employees were putting their hands on her and touching her "ass." Doc. 16-2. This was not her first sexual harassment complaint, as she had just returned from leave to Miceli days earlier following her prior sexual harassment complaint against Rogers.

Defendant's claim that Jackson committed a terminable offense by saying she would "cut" the next employee who inappropriately touches her holds no merit. Employees cannot be disciplined for engaging in protected activity otherwise accompanied by otherwise "unprofessional and intimidating conduct[.]" *Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1377 (Fed. Cir. 2012). In *Whitmore*, the complaining employee engaged in a heated argument with his supervisor about protected activity, in which the complaining employee threatened to "knock [his supervisor] into the basement," physically pushed another employee while stating that he "could have just cold cocked [the second employee] right then and there" for blocking his way. *Id.* at 1360. The Court ruled that such conduct, while unprofessional, was made while reporting protected activity and

thus shielded the employee from termination. *Id.* at 1377. Jackson's comments were much less threatening than the protected employee in *Whitmore*.

Even assuming arguendo that Jackson acted unprofessionally, otherwise unprofessional Title VII-protected activity is entitled to higher levels of legal protection. *Jackson*, 999 F3d at 352 (a plaintiff's abrasive workplace behavior could reasonably be a reaction to unresolved workplace discrimination); *NLRB v. Thor Power Tool Co.*, 351 F.2d 584, 587 (7th Cir. 1965) ("The employee's right to engage in concerted activity[5] may permit some leeway for impulsive behavior[.]"); *Pettway v. Am. Cast Iron Pipe*, 494 F. 2d 211 (5th Cir. 1974) (only very narrow circumstances exist in which protected activity loses protection, such as when the conduct is defamatory); *NLRB v. Mueller Brass Co.*, 501 F.2d 680, 685-6 (5th Cir. 1974) (termination unjustified where employee called supervisor a "damn liar" and invited him to "step outside").

### 1. Even If Miceli Terminated Jackson for a Purely Legitimate Concern, it Still Violated Jackson's Protected Rights

Reading the facts in a manner most favorable to Jackson as the non-moving party, a factual dispute exists as to Miceli's claim that terminating Jackson was purely motivated by legitimate workplace violence concerns. *Bazzi v. FCA US LLC*, 2024 Lexis 87978, at *33 (E.D. Mich, Nov. 26, 2024). This is especially true because, as mentioned, Miceli didn't terminate Jackson's coworkers Rogers and Croom for engaging in actual workplace violence. However, even an adverse employment action "moved purely by a legitimate concern about personnel matters" can still be unlawful. *Excel Corp. v. Bosley*, 165 F.3d 635, 639 (8th Cir. 1999). "When an employee is fired because he acted to defend himself against harassment, which supervisors failed to take reasonable measures to prevent or correct, the termination process cannot be said to be free from

---

[5] While *Thor Power Tool Co*. addressed employees' rights to engage in protected concerted activity under the National Labor Relations Act, these rights are effectively the same as Title VII anti-retaliation rights, especially because Title VII was modeled from the NLRA. *Albemarle Paper Co. v. Moody*, 422 US 405 (1975).

13

discrimination." *Id*. In *Excel Corp.*, the plaintiff was fired after physically striking her alleged sexual harasser and physically pushing past a supervisor, but a legitimate fact dispute existed whether such physical altercation was protected under Title VII because it was part of the plaintiff's opposition to sexual harassment. *Id*. at 638-39.

Here, Jackson was terminated for leaving a voicemail for human resources that stated, "The next time one of your employees puts their hands on me or touches my ass again I'm gonna cut them." Ex. P to Pl. Dep.; Doc. 17-1 at 72-73. The words "the next time one of your employees puts their hands on me or touches my ass again" make clear Jackson was calling human resources to report more sexual harassment. Miceli should have been especially aware of this because Jackson just returned from a prolonged leave after Miceli **substantiated her earlier sexual harassment claims** against Rogers. At the very least, if Miceli had concerns about her voicemail (and as part of its normal investigatory process), it should have returned Jackson's phone call to ask which employee "put their hands on her" or "touched her ass."

Jackson left the voicemail out of exasperation, suffering more sexual harassment after she had already complained to the company without adequate response. Even if Jackson's voicemail was unprofessional, this would not override that she was engaged in the protected activity of complaining about workplace sexual harassment. Miceli could even have warned Jackson to refrain from threatening to "cut" anyone who sexually harassed her, and made a good faith investigation to determine whether she actually intended to tell human resources in advance that she planned to "cut" someone. Had Miceli been legitimately concerned about workplace violence, it would have questioned Jackson to determine which employee she was supposedly "threatening." Miceli did none of this because it did not seriously consider Jackson's voicemail a threat. Miceli terminated Jackson for engaging in protected activity.

14

## V.  CONCLUSION

For these reasons, Miceli's Motion for Summary Judgment must be denied as to Counts II and IV for retaliation.

Respectfully submitted,

/s/Matthew J. Clark, Esq.
Matthew J. Clark
Gregory, Moore, Brooks & Clark, P.C.
28 West Adams Ave., Suite 300
Detroit, MI 48226
(313) 964-5600 (Telephone)
(313) 964-2125 (Facsimile)
Matt@unionlaw.net

/s/Alisa Adams, Esq.
Alisa R. Adams (98503)
Adams Law Practice, LLC
P.O. Box 1834
Cleveland, Ohio 44106
(216) 926-0065 (Telephone)
Alisa.Adams@hotmail.com

February 11, 2026                    *Attorneys for Plaintiff*

### CERTIFICATION AS TO ADHERENCE TO LOCAL RULE 7.1(f)

Pursuant to Local Rule 7.1(f), the undersigned certifies the foregoing adheres to the page limitations set forth in Local Rule 7.1(f) for standard track cases.

/s/ Matthew J. Clark
Matthew J. Clark (P76690)

### CERTIFICATE OF SERVICE

The undersigned certifies that, on February 11, 2026, he served via e-filing the above document upon the Court and defense counsel.

/s/ Matthew J. Clark
Matthew J. Clark (P76690)

15