UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SAMANTHA JACKSON, | ) | CASE NO.: 1:25-cv-00387 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| MICELI DAIRY PRODUCTS CO., | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

Before the Court are cross-motions for summary judgment filed by Plaintiff Samantha Jackson ("Jackson") (Doc. 21) and Defendant Miceli Dairy Products Co. ("Miceli") (Doc. 19). Both motions are now fully briefed. (Docs. 21, 24, 26 (Jackson's motion); Docs. 19, 25, 27 (Miceli's motion).) For the reasons below, the Court DENIES Jackson's motion and GRANTS IN PART and DENIES IN PART Miceli's motion.

## I. BACKGROUND

Miceli is a cheese manufacturing company that operates a factory in Cleveland, Ohio. (Doc. 17-1 at 505-06.)[1] On April 20, 2023, it hired Jackson as a mozzarella production worker. (Doc. 16-1 at 192; Doc. 16-2 at 335; Doc. 16-4.) A little over three months later, on August 1, 2023, Miceli terminated her for making threats. (Doc. 16-12.) Although her tenure was short, Jackson claims that she faced pervasive sexual harassment while at Miceli.

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

According to Jackson, her direct supervisor often made sexual remarks to her, such as calling her "little booty cousin" and joking about wanting to slap her buttocks. (Doc. 16-1 at 136-37, 195-98.) Jackson reported that one of her co-workers, Deante Rogers, engaged in sexually inappropriate behavior as well. For example, Rogers allegedly asked Jackson, "Why are you looking at me like you want to suck my d***?" (Doc. 17-4 at 620; *see also* Doc. 16-1 at 253.) Jackson also recalled Rogers telling her that he would like to "add some more . . . white stuff to [her] face" after Jackson had been splashed by some of the dairy from the mozzarella machines. (Doc. 16-1 at 155; *see also* Doc. 17-4 at 620.) And Rogers himself admitted to simulating sex acts and pantomiming ejaculation while Jackson was nearby. (Doc. 16-1 at 155; Doc. 17-1 at 539-40; Doc. 22-2.)

Rogers' behavior proved to be the tipping point in Jackson's employment relationship with Miceli. (*See* Doc. 16-6.) On June 24, 2023, Jackson erupted at Rogers when he tried getting her to return to work after an extended break. (Doc. 18-1 at 672-74.) Jackson hurled insults at Rogers, calling him "bitch," and threatened "to have [her] baby daddy beat his ass." (Doc. 16-1 at 239, 241.) Jackson asserts that Rogers also threatened violence against her too, although another witness to the incident "said that [Rogers] didn't curse her out and [Jackson] was the aggressive one." (*Id.* at 237; Doc. 16-6.)[2]

[2] Rogers testified at his deposition that Jackson picked up a knife to threaten him during this incident. (Doc. 18-1 at 682-83.) Jackson denies that she did so. (Doc. 16-1 at 246.) The only other evidence in the record bearing on this assertion is an email noting that Rogers reported Jackson "had something in her hand and started walking towards him." (Doc. 16-6.) Given the competing evidence, there is a genuine dispute about whether Jackson used a knife. In any case, Miceli does not suggest that it fired Jackson because she pulled a knife on Rogers during the June 24 incident, so the Court does not further consider the issue here.

Supervisors eventually had to intervene to break up the fight. (*See* Doc. 16-6.) Miceli then sent both Jackson and Rogers home on administrative leave while it investigated the incident. (Doc. 17-1 at 531.) As part of that investigation, Jackson submitted a formal complaint against Rogers. (Doc. 17-4.) Later, after Miceli interviewed both Jackson and Rogers, it decided to issue final written warnings to both. (Doc. 17-1 at 531-32; Doc. 16-10; Doc. 22-3 at 970.)

With that, Jackson was able to return to work. But she did not remain at Miceli for much longer. On July 31, 2023, another co-worker allegedly groped Jackson. (Doc. 16-1 at 194, 212.) This prompted Jackson to call HR and leave the following message: "Hi Sheila, this is Samantha Jackson. The next time one of your employees puts their hands on me or touches my ass again, I'm going to cut them. Just to let you know." (Ex. P.)[3] The following day, Miceli terminated Jackson effective immediately. (Doc. 16-12.) In its termination letter, Miceli explained that it dismissed Jackson because she had threatened other employees in her voicemail in violation of company policy. (*Id.*)

## II. LEGAL STANDARD

Courts may enter summary judgment only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are material if they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). And disputes are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

[3] Exhibit P is a manually filed recording of Jackson's voicemail. (Docs. 16-13, 20.)

It is the moving party's initial burden to show that there is no genuine dispute of material fact. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000). If the moving party satisfies that burden, the burden shifts to the nonmoving party "to come forward with evidence showing that there is a genuine issue for trial." *Id.* When determining whether the parties have met their burdens, courts "view all evidence in the light most favorable to the nonmoving party." *Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 566 (6th Cir. 2023) (citation omitted). These standards do not change when there are cross-motions for summary judgment, and courts "evaluate each motion on its own merits." *Safety Specialty Ins. Co. v. Genesee Cnty. Bd. of Comm'rs*, 53 F.4th 1014, 1020 (6th Cir. 2022).

## III. ANALYSIS

When Jackson filed suit, she brought four claims against Miceli: two for hostile work environment under Title VII and Ohio law, and two for retaliation also under Title VII and Ohio law. (Doc. 1 at ¶¶ 32-60.) However, Jackson has since abandoned her hostile work environment claims, "agree[ing] not to oppose dismissal" of those claims. (Doc. 25 at 1016.) The Court therefore GRANTS Miceli's motion for summary judgment as to the hostile work environment claims and proceeds to consider only the retaliation claims. Because retaliation claims under Title VII and Ohio law "mirror each other in all relevant respects," the Court analyzes them together without distinction. *Crisp v. Scioto Ambulance Dist.*, 182 F.4th 490, 494 n.2 (6th Cir. 2026) (citation modified) (quoting *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 760 n.1 (6th Cir. 2008)).

At summary judgment, courts evaluate claims of retaliation under the *McDonnell Douglas* burden shifting framework. *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d

405, 412 (6th Cir. 2008). The burden starts with the plaintiff to establish a prima facie case of retaliation. *Id.* If the plaintiff is successful in doing so, the burden shifts to the employer to demonstrate that there is "a legitimate, nondiscriminatory reason for its actions." *Id.* If the employer does that, the burden then shifts back to the plaintiff to show that the proffered nondiscriminatory reason is pretextual. *Id.* The Court addresses each step of the framework in order.

### A. Prima Facie Case

A prima facie case of retaliation has four elements. A plaintiff must demonstrate that "she (1) engaged in protected activity that (2) was known to the employer and (3) suffered a materially adverse employment action that (4) 'would not have occurred in the absence of the alleged wrongful action or actions of the employer'" (*i.e.*, causation). *Crisp*, 182 F.4th at 494 (quoting *Laster v. City of Kalamazoo*, 746 F.3d 714, 731 (6th Cir. 2014)). "The burden of establishing a *prima facie* case is not an onerous one and is easily satisfied." *Russell v. Univ. of Toledo*, 537 F.3d 596, 609 (6th Cir. 2008); *accord Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 649 (6th Cir. 2015).

Jackson's retaliation claims center around the voicemail she left for HR the day before she was terminated. She argues that she was complaining about sexual harassment—about a co-worker groping her—and that Miceli terminated her in retaliation for making this complaint.

#### 1. Protected Activity

Title VII and Ohio law protect an employee's opposition to discriminatory practices. *See* 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an

unlawful employment practice by this subchapter . . . ."); Ohio Rev. Code § 4112.02(I) (making unlawful "discriminat[ion] in any manner against any other person because that person has opposed any unlawful discriminatory practice"). Not every kind of opposition is protected though. Opposition receives protection only if it is (1) reasonably clear that the plaintiff is challenging an unlawful employment practice, (2) "express[ed] . . . in a reasonable manner," and (3) supported by the plaintiff's "good faith belief that the opposed practices were unlawful." *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 345 (6th Cir. 2021) (citations omitted). The first two requirements are at issue in this case.

***Reasonable Clarity.*** A complaint need not "be lodged with absolute formality, clarity, or precision" to warrant protection. *Yazdian*, 793 F.3d at 645 (quoting *Stevens v. Saint Elizabeth Med. Ctr., Inc.*, 533 F. App'x 624, 631 (6th Cir.2013)). While "vague charge[s] of discrimination" will not suffice, neither is lawyerly exactitude required. *Id.* (quoting *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir.1989)). It is enough that an employer "should have reasonably understood that [the plaintiff] was making a complaint of [] discrimination." *Mumm v. Charter Township of Superior*, 727 F. App'x 110, 112 (6th Cir. 2018) (quoting *Braun v. Ultimate Jetcharters, LLC*, 828 F.3d 501, 512 (6th Cir. 2016)).

Jackson's voicemail clears this bar. In the voicemail, she said, "The next time one of your employees puts their hands on me or touches my ass again, I'm going to cut them." (Ex. P.) The reference to employees "put[ting] their hands on me or touch[ing] my ass" could reasonably be understood as a reference to sexual harassment in the form of unwanted touching. *See Wheeler v. Southland Corp.*, 875 F.2d 1246, 1250 (6th Cir. 1989) (explaining that unwanted touching is sexual harassment). Since Jackson also used the word "again," an employer could

have reasonably understood the voicemail as indicating that Jackson had previously been subject to such harassment. Taken as a whole, Jackson's statement may not be the clearest, but it sufficiently put Miceli on notice that she was complaining about sexual harassment. It is enough to satisfy the low burden for considering this portion of a plaintiff's prima facie case. *See Russell*, 537 F.3d at 609.

***Reasonable Manner.*** Courts apply a balancing test to determine whether opposition activity was conducted reasonably (and therefore protected) or not. *Armstrong v. Whirlpool Corp.*, 363 F. App'x 317, 331 (6th Cir. 2010). They balance two factors: "[1] the employer's recognized, legitimate need to maintain an orderly workplace and to protect confidential business and client information, and [2] the equally compelling need of employees to be properly safeguarded against retaliatory actions." *Id.* (quoting *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 722 (6th Cir. 2008));[4] *accord Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998); *Jones v. Flagship Int'l*, 793 F.2d 714, 728 (5th Cir. 1986).

Under this test, opposition activity "is not protected when [an employee] violates legitimate rules and orders of his employer, disrupts the employment environment, or interferes with the attainment of his employer's goals." *Jackson*, 999 F.3d at 345 (quoting *Booker*, 879 F.2d at 1312). "The ultimate question under the balancing test is whether the employee's [actions were] reasonable under the circumstances." *Armstrong*, 363 F. App'x at 331 (quoting *Niswander*, 529 F.3d at 725). Activity that may be unreasonable in one context may be

---

[4] In *Niswander*, the Sixth Circuit introduced a more reticulated balancing test with six factors. 529 F.3d at 726. That balancing test is relevant only to the use of confidential documents, which are not at issue here. *Jones v. St. Jude Med. S.C., Inc.*, 504 F. App'x 473, 480 (6th Cir. 2012). So, the Court applies the general two-factor balancing test.

reasonable in another. *See, e.g.*, *Folkerson v. Circus Circus Enters., Inc.*, 68 F.3d 480, 1995 WL 608432, at *5, 1995 U.S. App. LEXIS 30137, at *13-14 (9th Cir. 1995) (unpublished table decision) (holding that use of physical force was protected activity when employee was fending off an aggressive customer).

Before applying this test, though, the Court must address a threshold question. Does this analysis of reasonableness take place at the prima facie stage of the *McDonnell Douglas* framework, or at the nondiscriminatory reason/pretext stages? The Sixth Circuit has not given definitive guidance. In some cases, it has applied the analysis at the prima facie stage and affirmed summary judgment against plaintiffs for failure to act in a reasonable manner. *See, e.g.*, *Crisp*, 182 F.4th at 494-95; *Niswander*, 529 F.3d at 727. But the unreasonableness of opposition activity also "has obvious bearing on the second step of the *McDonnell Douglas* burden-shifting analysis." *Matima v. Celli*, 228 F.3d 68, 80 (2d Cir. 2000). If an employee behaves in an unreasonable way while opposing unlawful employment actions, that unreasonable behavior can be a nondiscriminatory reason for an employer to terminate the employee. Consistent with this view, the Sixth Circuit has addressed the reasonableness of opposition activity at later stages of the *McDonnell Douglas* framework as well. *See, e.g.*, *Jones v. St. Jude Med. S.C., Inc.*, 504 F. App'x 473, 480-81 (6th Cir. 2012) (situating the reasonableness analysis under a section on pretext); *Armstrong*, 363 F. App'x at 331-32 (similar).[5] Even in cases where the Sixth Circuit has expressly considered reasonableness under the prima facie case, it has also considered it at

[5] The *Armstrong* court discussed reasonableness together with pretext, but it is not completely clear whether the court viewed them as the same topic or distinct issues. Regardless, the point stands that the Sixth Circuit has not provided precise guidance on which step of *McDonnell Douglas* to consider reasonableness at.

later steps of the burden shifting framework. *See Niswander*, 529 F.3d at 727-28 (holding that use of confidential information rendered the plaintiff's activity unprotected and also supplied a legitimate, nondiscriminatory reason for dismissal).

From this, the Court concludes that the reasonableness of an employee's manner of opposition is relevant at both the prima facie stage and later stages of the *McDonnell Douglas* framework. Published opinions clearly indicate that reasonableness is considered at the prima facie stage. A prima facie case requires a showing of protected activity. *Jackson*, 999 F.3d at 343. Meanwhile, opposition activity is not protected unless it is expressed in a "reasonable manner." *Id.* at 345. When employees have behaved unreasonably in opposing unlawful employment actions, the Sixth Circuit has not hesitated to affirm summary judgment against them for failure to demonstrate a prima facie case. *See Crisp*, 182 F.4th at 494; *Niswander*, 529 F.3d at 727.

Showing that opposition was conducted in a reasonable manner is not a high bar to clear, though. In addressing the issue, courts must be mindful of the principle that the burden to establish a prima facie case is low. *See Russell*, 537 F.3d at 609. Courts must also remember that reasonableness at the prima facie case requires a "fact-intensive" analysis. *See Yazdian*, 793 F.3d at 647 (discussing the fact-bound nature of the third element of protected activity—the reasonableness of an employee's good faith belief that opposed practices were unlawful).

Putting these two principles together illustrates that courts should not grant summary judgment against an employee at the prima facie stage on the ground that the employee's opposition was not conducted in a reasonable manner unless the employee's actions were so blatantly unreasonable that any rational juror would have to agree. This might be the case when

the employee's actions are beyond the pale, such as when the plaintiff in *Crisp* shared sexually explicit images of her co-worker and that co-worker's spouse. 182 F.4th at 494. Or this might occur when an employee acts in ways that are unrelated to and do not contribute to her opposition, like the plaintiff in *Niswander* who gratuitously shared confidential customer information of minimal relevance to her employment grievance. 529 F.3d at 727. In these egregious circumstances, employers are entitled to terminate their employees based on those unreasonable actions, and the employees have no opportunity to rebut that justification for termination.

When the situation is less clear cut and an employee's actions may or may not be reasonable under the circumstances, it is inappropriate to resolve the case at the prima facie stage. Rather, it is better to move to the second and third steps of *McDonnell Douglas*. The employer can still cite the arguably unreasonable actions of its employee as a legitimate, nondiscriminatory reason for termination, but the employee has a chance to rebut that reason as pretextual.

Considering reasonableness this way—across the entirety of *McDonnell Douglas*—respects the balance that employment law strikes in protecting employees from retaliation while maintaining sufficient flexibility for employers to "select[] and control [their] personnel." *Booker*, 879 F.2d at 1312 (quoting *Hochstadt v. Worcester Found. for Experimental Biology*, 545 F.2d 222, 231 (1st Cir.1976)). It safeguards employer interests by allowing them to prevail at the prima facie stage with no additional questions asked when employees act unreasonably to an extreme. But by keeping the bar for reasonableness low at the prima facie stage, this approach also respects "the spirit and purpose behind Title VII as a broad remedial measure." *Johnson v.*

*Univ. of Cincinnati*, 215 F.3d 561, 580 (6th Cir. 2000). Moreover, even if a case moves past the prima facie stage, the employer can still cite the unreasonable manner of opposition activity as a nondiscriminatory reason for termination; the employee simply receives a chance to rebut that argument. This point-counterpoint procedure gives both sides the chance to make their arguments.

Having clarified the proper approach for considering the reasonableness of manner of opposition, the Court can now evaluate whether Jackson's actions were reasonable. Recall that she left a voicemail for Miceli's HR threatening to "cut" the next employee who "puts their hands on [her] or touches [her] ass again." (Ex. P.) Miceli argues that this was unreasonable because it included a threat. There is some force to that argument. Employers like Miceli have a legitimate interest in maintaining an "orderly workplace" free of threats and insults, and that interest is weighty on Miceli's side of the balancing test. *Armstrong*, 363 F. App'x at 331.

On Jackson's side of the balance, however, there are mitigating factors that counsel against resolving her retaliation claims at the prima facie stage. Complaints of employment discrimination and harassment can often inspire heated emotions and frustration, so it makes sense to give some allowance for intemperate or unprofessional language. *Cf. Yazdian*, 793 F.3d at 645 (opposition need not be made with "formality"). Of course, Jackson went further than simple unprofessionalism by making a threat. But even then, Jackson's threat to use force arose in the context of defending herself against unwanted touching. (*See* Ex. P.) The use of physical force can be reasonable when defending oneself from physical harassment. *See Folkerson*, 1995 WL 608432, at *5, 1995 U.S. App. LEXIS 30137, at *13-14. Whether Jackson went too far in specifically saying that she would cut someone in self-defense ultimately turns on how

problematic the environment at Miceli was. And there are genuine factual disputes over the events leading up to Jackson's voicemail. (*E.g.*, *supra* Section I.) The Court therefore finds that, on the current record, Jackson has made a sufficient showing of reasonableness to satisfy the "protected activity" element of her prima facie case.

To be clear, the Court does not condone Jackson's threats.[6] They were improper and uncalled for. The Court concludes only that Jackson's actions were not so egregious that they deprive her of the protections of Title VII and Ohio law without any chance for her to argue that her threat did not actually motivate Miceli to fire her. A jury may ultimately conclude that Jackson's threat justified her dismissal. But in evaluating Jackson's prima facie case at summary judgment, the Court cannot reach that conclusion as a matter of law. The Court therefore finds that Jackson has sufficiently shown she engaged in protected activity at this stage of litigation.

**2. Employer's Knowledge**

Jackson easily demonstrates employer knowledge. As explained above, Jackson adequately made a complaint against sexual harassment when she called HR and left a voicemail. Miceli expressly referenced this voicemail when terminating Jackson. (Doc. 16-12.) Although Miceli focused on the threat that Jackson made, it is indisputable that Miceli received

---

[6] If there were any doubt, the Court expressly rejects Jackson's argument that threats are always protected when paired with opposition to unlawful employment practices. "When an employee engages in both protected and unprotected conduct under Title VII, she cannot use the protected conduct to seek shelter from a firing that is based on her unprotected conduct." *Crisp*, 182 F.4th at 495. Jackson's primary case to the contrary, *Whitmore v. Department of Labor*, 680 F.3d 1353 (Fed. Cir. 2012), is inapposite and nonbinding. *Whitmore* dealt with whistleblower protection law, which uses a different burden shifting scheme. *Id.* at 1366-67. More importantly, the balance of interests is much different when it comes to whistleblowers as such laws also involve the public's interest in learning about government misconduct.

Jackson's call. Miceli therefore had knowledge of the call's contents, including the protected activity that Jackson engaged in.

**3. Adverse Employment Action**

There is also no question Jackson established Miceli's adverse employment action. Miceli terminated her, and termination is the paradigmatic adverse employment action. *Adair v. Charter County of Wayne*, 452 F.3d 482, 490 (6th Cir. 2006).

**4. Causation**

Causation can likewise be addressed quickly. Miceli terminated Jackson just one day after she purported to complain about sexual harassment. (Doc. 16-12.) Although temporal proximity alone may not be sufficient to show causation "where some time elapses" between protected activity and termination, "[w]here an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Yazdian*, 793 F.3d at 650 (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir.2008)). Under *Yazdian*, a reasonable juror could infer from this quick turnaround that Jackson's complaint of harassment caused her termination.

Miceli advances a single argument against causation: It terminated Jackson for making threats rather than for a protected complaint of harassment. (Doc. 24 at 1000; Doc. 27 at 1045-46.) That is, Miceli argues it had a legitimate, nondiscriminatory reason for terminating Jackson. But that is the second stage of the *McDonnell Douglas* burden shifting framework, and it is "improper[] [to] import[] the later stages of the *McDonnell Douglas* inquiry into the initial prima facie stage." *Cline v. Cath. Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 2000). For this

reason, the Sixth Circuit has "instructed that the legitimate non-discriminatory reason offered by the employer at the second stage of the *McDonnell Douglas* inquiry may not be considered in determining whether the employee has produced sufficient evidence to establish a prima facie case." *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 473 (6th Cir. 2002). At the prima facie stage, courts may consider only "plaintiff's evidence independent of the nondiscriminatory reason" given by the employer. *Cline*, 206 F.3d at 661.

Examining only Jackon's evidence and disregarding the justification that Miceli gave for terminating Jackson, the Court concludes that Jackson has sufficiently established causation. Jackson has therefore established a prima facie case of retaliation.

**B. Nondiscriminatory Reason**

At the second stage of *McDonnell Douglas*, Miceli bears the burden to show that a legitimate, nondiscriminatory reason motivated its dismissal of Jackson. *Martin*, 548 F.3d at 412. Miceli has only a burden of production, not a burden of persuasion. *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012). Miceli readily clears that low bar because Jackson made a threat, and threats are reason enough to fire someone. *See, e.g.*, *Smith v. Leggett Wire Co.*, 220 F.3d 752, 759 (6th Cir. 2000); *Donald v. Buckman Lab'ys, Inc.*, 527 F. App'x 443, 451 (6th Cir. 2013); *Beny v. Univ. of Mich. Bd. of Regents*, 740 F. Supp. 3d 621, 639 (E.D. Mich. 2024), *aff'd sub nom. Beny v. Univ. of Mich.*, No. 24-1674, 2025 WL 2124175 (6th Cir. July 29, 2025); *Bormuth v. Dahlem Conservancy*, 837 F. Supp. 2d 667, 675 (E.D. Mich. 2011).

**C. Pretext**

That takes the Court to the third stage of *McDonnell Douglas*, where Jackson has the chance to rebut Miceli's proffered justification by arguing it was pretextual. *Martin*, 548 F.3d at

412. She can do so "by producing 'evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff.'" *Braithwaite v. Timken Co.*, 258 F.3d 488, 497 (6th Cir. 2001) (quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). Here, Jackson has produced evidence that Miceli did not fire employees who engaged in *actual* violence, in contrast to her dismissal for *threatened* violence.

First, there is Rogers, the co-worker with whom Jackson fought in June 2023. Back in October 2021, Rogers received a final warning for getting "into an altercation with another employee [in] which [he] physically pushed that employee into a wall." (Doc. 22-3 at 967.) Yet he was not dismissed. Rather, he received only a 3-day suspension and 90-day period of probation. (*Id.*) Second, there is Darrell Croom, who "became violent," "through [sic] a chair in the office," and then charged at a supervisor trying to "provoke and [sic] physical altercation." (Doc. 22-4 at 975.) Even though Croom's incident occurred just three months before Jackson's, Miceli did not fire him and only suspended him for three days. (*Id.*)

To be sure, the incidents involving Rogers and Croom did not involve any knives or blades. A rational jury could conclude that threatening someone with a knife is worse than pushing someone against the wall or throwing a chair because knives are especially dangerous. But a rational jury could also reach the opposite conclusion—that actual violence is worse than threats of violence. If the former, Miceli had good reason to fire Jackson while keeping Rogers and Croom employed. If the latter, there is a strong chance that Miceli's invocation of Jackson's threat was mere pretext. All that is to say, a reasonable jury could come out either way on

pretext. That means there is a genuine dispute of material fact precluding summary judgment. *See Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 814 (6th Cir. 2020).

## IV. CONCLUSION

Ultimately, the facts are not clear enough to grant summary judgment to either party, except on the hostile work environment claims which Jackson conceded. So, the Court GRANTS Miceli's motion for summary judgment only as to Jackson's hostile work environment claims. The Court otherwise DENIES Miceli's motion, and it DENIES Jackson's motion for summary judgment as well. This case shall move forward on Jackson's retaliation claims.

**IT IS SO ORDERED.**

Date: September 28, 2026

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE